## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| Theresa Padgett<br>325 Kirchdorfer Road<br>Brandenburg, KY 40108<br><br>and<br><br>David Padgett<br>182 My Way Circle<br>Santa Rosa Beach, FL 32459<br><br>　　　　　　Plaintiffs,<br>v.<br><br>The County of Meade, Kentucky<br>516 Hillcrest Drive<br>Brandenburg, KY 40108<br><br>SERVE:  Hon. Troy Kok<br>　　　　Meade County Judge/Executive<br>　　　　Meade County Courthouse<br>　　　　516 Hillcrest Drive<br>　　　　Brandenburg, KY 40108<br><br>and<br><br>John Doe Nos. I-X, in their individual and official capacities.<br><br>　　　　　　Defendants. | Case No.: 3:24-cv-357-RGJ<br><br>Judge Judge Rebecca Grady Jennings |

**COMPLAINT WITH JURY DEMAND (STATEWIDE RELIEF SOUGHT)**

Plaintiffs Theresa Padgett and David Padgett complains of Defendants The County of Meade, Kentucky and John Doe Nos I-X, in their individual and official capacities, and allege as follows:

### INTRODUCTION

1. This is an action for damages brought pursuant to 42 U.S.C. § 1983 based upon violations of Plaintiffs' civil rights under the First, Fifth, and Fourteenth

Amendments to the United States Constitution. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and § 1343. Venue is proper in this district under 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## **PARTIES**

2. Plaintiff Theresa Padgett ("Mrs. Padgett") is a Kentucky citizen and domiciled at 325 Kirchdorfer Road, Brandenburg, KY 40108.

3. Plaintiff David Padgett ("Mr. Padgett") is a Florida citizen and domiciled at 182 My Way Circle, Santa Rosa Beach, FL 32459.

4. Defendant The County of Meade, Kentucky ("Meade County") is a body politic and a political subdivision of the Commonwealth of Kentucky, with its place of operations located at 516 Hillcrest Drive, Brandenburg, KY 40108. Hon. Troy Kok is presently the duly elected and serving County Judge/Executive of Meade County.

5. Defendants John Doe Nos. I-X, are presently unknown employees, agents, or members of the of the Meade County government. John Doe Nos. I-X, acting under the color of state law, conspired to engage in the wrongful and unlawful conduct alleged in this complaint.

## **FACTUAL ALLEGATIONS**

6. The Plaintiffs incorporate by reference Paragraphs 1 through 5 as if fully rewritten here.

7. The Plaintiffs have been politically active in Meade County for over twenty years.

8. For example, shortly after Mrs. Padgett moved to Meade County in 1994, she became active in local and state politics. She has been and is registered as a member

of the Republican Party. Mrs. Padget helped get the first Republican since Ronald Reagan, to win an election for county-wide office within Meade County.

9. For the last thirty years, the Plaintiffs attended local fairs and parades to educate the public on the various differences between Republicans and Democrats.

10. Mrs. Padgett also ran for two county-wide public offices in Meade County: she ran for Judge Executive in 2002, where she lost by approximately 82 votes; and she ran for State Representative in 1998, where she lost by approximately 700 votes.

11. During Governor Ernie Fletcher's election in 2002-03, the Plaintiffs were his main contacts in Meade County.

12. Later, Governor Fletcher appointed Mrs. Padgett as a local Magistrate in 2005. During her tenure as a Magistrate, Mrs. Padgett was instrumental in stopping Meade County from raising business taxes.

13. When Bill Corum ran against Virgil Moore for the office of State Senator in the 2000 election. Mr. Corum came out in support of same-sex civil unions. The Plaintiffs advertised that Mr. Corum supported same-sex civil unions. Mr. Corum came on the radio, WMMG 93.5, to say that the Plaintiffs were lying, however, they produced proof that they were telling the truth. Mr. Corum lost the election.

14. Jim Thompson was a state representative for Meade County and he voted for same-sex civil unions. Because of this the Plaintiffs produced a newspaper that went to every single household in the entire county that informed the public that Mr. Thompson voted to tax the deaf, to tax the handicapped, to tax the farmers, and then voted for same-sex unions. Mr. Thompson on the radio, WMMG 93.5, and denied the allegations that the Plaintiffs made. Mr. Thompson lost his election in 2004.

15. Barry Jo Cannon was running for state Senate against Carol Gibson in the 2004 election. Mr. Cannon drove around the county with the Ten Commandments on the side of his car. Mr. Cannon was a registered Democrat who swore an oath to support the Democrat platform. The Plaintiffs again educated the public about Mr. Cannon and Democrats by showing the public his party platform. Mr. Cannon did not win the state Senate seat.

16. During the 2014 general election, the Plaintiffs funded a lawsuit to disqualify the then-sitting Meade County Clerk, Susan Masterson, as a candidate for that office. Mrs. Padgett's daughter, Michelle Thompson, was Ms. Masterson's opponent in the election for the office.

17. Ms. Masterson was a convicted felon. Nevertheless, Ms. Masterson won the 2014 general election for the office of Meade County Clerk. However, Ms. Masterson was unable to serve. Judy Jordan, was appointed in her place and filled the position of Meade County Clerk. Ms. Thompson did not serve as the Clerk. Then Judge Executive Gerry Lynn was the person who appointed Judy Jordan.

18. The year after the Plaintiffs claimed that Ms. Masterson was a convicted felon, their residence's fair cash value for *ad valorem* tax purposes was increased by $196,100 by the Meade County Property Valuation Administrator. The Plaintiffs did not make any improvements to this real property and there was no lawful justification for the increase in the property's fair cash value. The Plaintiffs researched if other properties in the area increased in value to the extent their property was, however, they could not find any.

19. In 2015, Susan Masterson claimed her civil rights were restored, and that this restoration is filed with the Kentucky Secretary of State.

20. In 2019, the Plaintiffs researched the taxable value of the real properties they owned in Meade County compared to similar locations:

    a. The Plaintiffs owned a business called "Super Clean Auto Spa" with two locations. The first location on Old Ekron Road was valued at $706,400 from 2007-10; $632 thousand from 2011-17; and $357,400 in 2018. The second location on Old State Road, with no visibility from the main road, was valued at $357,400 in 2019.

    b. In contrast, a similar business named "Carl Austin's Car Wash" was valued at $90 thousand in 2019. And "Carl Austin's Car Wash," was located in a more desirable location then either of the "Super Clean Auto Spa" locations.

21. The Plaintiffs appealed these tax issues to the Kentucky Claims Commission, however, the case was dismissed.[1]

22. In 2022, the Plaintiffs submitted an Open Record Request to the Kentucky Governor's Office, asking for records associated with the alleged restoration of Ms. Masterson's civil rights.

23. The Kentucky Governor's office was unable to locate any records of Susan Masterson's civil rights restoration.[2] Upon information and belief, Ms. Masterson's civil rights were not restored by Governor Fletcher or any other official.

24. On or about October 2022, the Plaintiffs brought the aforementioned record issue to the attention of the Republican Party of Meade County. Two members of Meade

---

[1] Exbt. 1: Claims Commission Final Order
[2] Exbt. 2: Response to Open Records request

County's Planning and Zoning were in attendance: Guy Garcia, Chairman of the Planning Commission; and Greg Stith, Secretary of the Board of Adjustments.

25. In 2023, Meade County criminally charged the Plaintiffs, Mrs. Padgett's daughter and husband with a zoning violation.[3] No civil remedy was ever asserted against them by Meade County.

26. According to Meade County Planning and Zoning, only two other people in the last five years have been criminally charged for violating a zoning ordinance: Thomas Benham[4] and Janice Owens.[5] But a records search does not show such results for the Janice Owens case. And the County charged Thomas Benham for a zoning violation and criminal trespass.

27. The Plaintiffs never received a Civil Citation for the alleged zoning violation.[6]

28. As of May 2023, Meade County civilly cited forty-seven people with zoning violations.[7] In 2022, Meade County opened an investigation against a person living in his RV. But as of May 2023, the County has never filed criminal charges against any of these people.

29. At the time of the Plaintiffs were criminally charged with a zoning violation, the County's rules to enforce a zoning ordinance had a civil remedy enforce a zoning violation.

---

[3] Exbt. 3: Uniform Citation
[4] Exbt. 4: Thomas Benham Citation; The charge of violation of City Ordinance was dismissed. However, he was found guilty of criminal trespass.
[5] Exbt. 5: List of citizens criminally charged in Meade County and List of Zoning Violations.
[6] Exbt. 6: See County of Meade Ordinance No. 2023-02 (2023) p. 5
[7] Exbt. 5: List of citizens criminally charged in Meade County and List of Zoning Violations.

30. A zoning complaint must include the following: the date and time of issuance; the date and time the offense was committed; the section of the code or the number of the ordinance violated; and, language stating the person cited shall have seven business days to respond to the citation by either paying the civil fine or requesting, in writing, a hearing to contest the citation and failure to respond within seven business days and person shall be deemed to have waived right to a hearing.[8]

31. Instead of seeking a civil remedy for the alleged zoning violation, Meade County filed criminal charges against the Plaintiffs, contrary to any other recorded means of zoning enforcement in recent Meade County history. Meade County served the criminal complaint, at their business, while the Plaintiffs had customers at their home.

32. Within the last five years only the Plaintiffs and their family have been the criminally charged solely with a zoning violation without any other underlying crime.[9]

33. On or about May 2023, the Plaintiffs had to hire legal counsel to defend them in the criminal action. The Padgetts had to spend three thousand dollars in attorney fees to defend them in the criminal action.

34. The Plaintiffs and their family were the only case provided to the Meade County Attorney to prosecute by Planning and Zoning.

35. Meade County admitted it did not follow proper process to criminally charge the Plaintiffs and dismissed the case.

36. The County wrote:

> The Commonwealth concedes that there appears to be some deficits regarding the procedures in this case. Defense counsel has brought these to its attention. As stated, the complaint on further review appears deficient. The Padgett's should have had an opportunity to exhaust their

---

[8] Exbt. 6: See County of Meade Ordinance No. 2023-02 (2023) p. 5
[9] Exbt.2: Criminal Citation

7

administrative remedies and this County Attorney was unaware that this was not provided. Per our discussions; this was not purposeful by Planning and Zoning either.[10]

37. Further, the Couty Attorney wrote that "The Meade County Attorney does not represent Planning and Zoning. Since this County Attorney has been in Office (January 1, 2023) the complaint regarding the Padgett's is the only one provided by Planning and Zoning.[11]

38. The County Attorney moved for the Court to dismiss the action.

39. Due to Meade County's actions, the Plaintiffs are currently selling their home and plan on moving out of Meade County permanently. The Plaintiffs' reputations has been damaged by Meade County's actions and they do not feel like they can live in their home without being harassed by the employees and agents of Meade County.

## **COUNT I- VIOLATION OF THE EQUAL PROTECTION CLAUSE**

## **(All Defendants; 42 U.S.C. § 1983 and *Monell*)**

40. The Plaintiffs incorporates by reference Paragraphs 1 through 39 as if fully rewritten here.

41. The United States Supreme Court has repeatedly "explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or *by its improper execution through duly constituted agents*.'"[12]

---

[10] Exbt. 7: COMMONWEALTH'S RESPONSE TO DEFENDANT'S MOTON TO DISMISS p. 2
[11] Id at. 1.
[12] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing S*ioux City Bridge Co.*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)) (emphasis added).

42. In furtherance of this objective, the Supreme Court has allowed for "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.[13]" The Court of Appeals for the Sixth Circuit has further expounded upon this principle.[14]

43. Out of forty-seven people – five years predating the criminal charge against the Plaintiffs – only the Plaintiffs and their family members were criminally charged for only having an alleged zoning violation.

44. The County Attorney for Meade County stated in a pleading "Since this County Attorney has been in Office (January 1, 2023) the complaint regarding the Padgett's is the only one provided by Planning and Zoning."

45. The Plaintiffs are an identifiable group whereas Meade County has engaged in wholly irrational and discriminatory criminal enforcement of a zoning ordinance against the Plaintiffs and their family. The Plaintiffs position is further strengthened given that this prosecution emerged after Mrs. Padgett exposed, what Mrs. Padgett believed to be true, their county clerk's felony record, giving rise to the fact that she was exercising her First Amendment freedom of speech rights.

46. Meade County had a discriminatory purpose when it charged the Plaintiffs for a zoning violation. This is shown through the procedural defects of not naming the ordinance in the criminal summons or resorting to civil enforcement options as a means

---

[13] *Id.* at 564 (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989)).
[14] *Bowman v. City of Olmsted Falls*, 756 Fed.Appx. 526, 530 (6th Cir. 2018) (citing *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 549 (6th Cir. 2007) (quoting *Olech*, 528 U.S. at 564, 120 S.Ct. 1073)).

of first resort, along with the fact that no Meade County resident has been criminally charged as a first resort for solely having a zoning violation in recent county memory (besides the Padgett's daughter and husband), topped by the fact that the prosecution comes after Mrs. Padgett accused the County Clerk for having a felony record, there is clear proof of discriminatory intent on the part of the government in pursuing these charges.

47. The nature of the criminal charges against the Plaintiffs, as examples above, creates a prima facie case of wholly irrational and arbitrary discrimination against a "class of one" comprising of the Padgetts and their family.

48. Meade County is likewise liable under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978), for the foregoing Fourteenth Amendment violations, because, but not limited to, officials with final decision-making authority ratified illegal actions.[15]

49. Plaintiffs further seeks their reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

50. The acts of Meade County described above constituted a violation of 42 U.S.C. § 1983, in that they deprived Plaintiffs of his rights under the Fourteenth Amendment to the United States Constitution.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT
### (All Defendants; 42 U.S.C. § 1983 and *Monell*)

51. The Plaintiffs incorporates by reference Paragraphs 1 through 50 as if fully rewritten here.

---

[15] The Plaintiffs believe members of Planning and Zoning made the final decision to charge the Plaintiffs with a Zoning Violation.

52. Plaintiffs engaged in clearly established protected speech in their political activism as set forth in, among other things, paragraphs 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, and 24. The following case law illustrates that political activism is free speech protected by the first amendment *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016); and *Guffey v. Mauskopf*, 45 F.4th 442 (D.C. Cir. 2022).

63. Defendants Meade County and John Doe I-X retaliated against Plaintiffs for this protected speech by engaging in several adverse actions that would deter a person of ordinary firmness from engaging in such protected speech, including, without limitation: by overtly assessing their properties at a higher value tax value then more desirable properties; raising the tax value of their home by over a hundred thousand dollars the year after the Plaintiffs funded a lawsuit to disqualify the current county clerk Susan Masterson; and, criminally charging the Plaintiffs, on the onslaught, for a zoning violation.

64. There is a causal connection between Plaintiffs' protected speech and the adverse actions, in part, because the year after the Susan Masterson lawsuit the Meade County PVA raised the taxable value of the Plaintiffs' home by over a hundred thousand dollars.

65. There is a causal connection between Plaintiffs' protected speech and the adverse action, in part, because the year after the Plaintiffs the civil rights restoration issue of Susan Masterson to the local Republican Party, the Plaintiffs, and their family, were the only ones in recent memory to be criminally charged for a zoning violation without any other underlying criminal action. And this causal connection is further supported because two members of planning and zoning were an attendance when the local Republican Party met about the civil right restoration issue.

66. Defendants have thus violated Plaintiffs clearly established First Amendment rights, as set forth in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), establishing that all three elements of a First Amendment retaliation claim are met here.

67. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the Commonwealth of Kentucky, subjected the Plaintiff, a citizen of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the party injured under 42 U.S.C. §1983.

68. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, Plaintiffs has suffered various damages, including, without limitation, economic damages in the form of being overtaxed for their properties, legal defense expenses, and other damages, such as will be proven at trial, which exceeds $250,000.

69. Meade County is likewise liable under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978), for the foregoing First Amendment violations, because, but not limited to, officials with final decision-making authority ratified illegal actions.

70. Plaintiff further seeks punitive damages against Defendants John Doe I-X, in their individual capacities, since the actions complained of were motivated by bad faith or a corrupt motive, causing willful and malicious harm to Plaintiffs clearly established rights.  Plaintiffs demands judgment on these punitive damages against Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $250,000.00, exclusive of interest and costs.

71. Plaintiffs further seeks their reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

## **JURY TRIAL DEMAND**

Plaintiffs Theresa Padgett and David Padgett demand trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs Theresa Padgett and David Padgett pray for the following relief:

      a.    A trial by jury of the claims alleged by the Plaintiffs;

      b.    A judgment against the Defendant for the claims alleged in this Complaint in an amount in excess of the jurisdictional limits of this tribunal;

      c.    Recovery of costs and expenses incurred in prosecuting this action, including their reasonable attorney fees; and

      d.    For any and all other relief the Plaintiffs may be entitled to at law or equity.

                                                          Respectfully submitted,

                                                          */s/ Zachary Smith*
                                                         Zachary J. Smith, Esq. (#98886)
                                                          P.O. Box 75310
                                                          Fort Thomas, KY 41075
                                                          Phone: (895) 429-8254
                                                          Fax: (859) 374-6301
                                                          zjsmithlaw@protonmail.com
                                                          *Pro Hac Vice Admission*

                                                          */s/Robert A. Winter, Jr.*
                                                          Robert A. Winter, Jr. (#78230)
                                                          P.O. Box 175883
                                                          Fort Mitchell, KY 41017-5883
                                                          (859) 250-3337
                                                          robertawinterjr@gmail.com
                                                          *Local Counsel*

## VERIFICATION

I, Theresa Padgett, states she believes the statements of the foregoing complaint are true and accurate to the best of my knowledge and belief.

_____
THERESA PADGETT

STATE OF Florida  } SCT.
COUNTY OF Walton }

The foregoing was verified under oath by Theresa Padgett on this __12__ day of __June__ 2024 before me, a Notary Public, State-at-Large.

_____
Notary Public, State-at-Large,
My Commission Expires: 11/15/2027
My License Number: HH 464610

**JESUS MORENO**
Commission # HH 464610
Expires November 15, 2027

I, David Padgett, states he believes the statements of the foregoing complaint are true and accurate to the best of my knowledge and belief.

_____
DAVID PADGETT

STATE OF Florida  } SCT.
COUNTY OF Walton }

The foregoing was verified under oath by David Padgett on this __12__ day of __June__ 2024 before me, a Notary Public, State-at-Large.

**JESUS MORENO**
Commission # HH 464610
Expires November 15, 2027

_____
Notary Public, State-at-Large,
My Commission Expires: 11/15/2027
My License Number: HH 464610

14